**CHEMICAL SPECIALTIES MANUFAC-TURERS ASSOCIATION, INC.,**
**Plaintiff-Appellant,**

**v.**

**Stephen P. CLARK et al., Defendants-Appellees.**

**No. 72-1791.**

United States Court of Appeals,
Fifth Circuit.

July 12, 1973.

Francis W. Sams, Miami, Fla., Robert L. Ackerly, Washington, D. C., for plaintiff-appellant.

Stuart Simon, County Atty., Alan T. Dimond, Asst. County Atty., Miami, Fla., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

PER CURIAM:

On March 30, 1971, the Board of County Commissioners of Dade County, Florida adopted an ordinance amending its Municipal Code by adding Section 24–44.[1] That ordinance, as now modified, required that every product within the definition[2] of detergent or synthetic detergent must bear a label showing the ingredients of the product, listed in descending order of their presence by weight. CSMA[3] consists of manufacturers and marketers of products falling within the scope of the ordinance. Their basic premise is that Congress preempted this field of regulation through the 1966 Amendments to the Federal Hazardous Substances Act (FHSA), 15 U.S.C.A. § 1261. Thus, they seek a declaratory judgment that the Dade County ordinance is invalid.

In analyzing the question of federal preemption of an area admittedly the legitimate subject of *state* regulation, it is first necessary to determine in what possible contexts the question may arise. In so doing we implicitly acknowledge the supremacy of federal law wherever conflict is actually found, U.S.C.A. Const. Art. VI, Clause 2. Ordinarily, there are three possible events which occur when a state regulation (or local ordinance as the case is here) stands side-by-side with a federal law on the same topic: (i) the local ordinance may be in direct *conflict* with the federal law, in which case the state law must yield, (ii) the local rule may *coincide* or substantially imitate the federal law, a situation which may be desirable if concurrent enforcement is the congressional policy, or

---

1. Sec. 24–44. *Detergents*

   (a) It shall be unlawful for any person to sell, offer or expose for sale, give or furnish any synthetic detergent or detergent, whether in the form of crystals, powders, flakes, bars, liquids, sprays, or any other form, from and after August 20, 1972, unless the container, wrapper, or other packaging, shall from and after August 20, 1972, clearly and legibly list all ingredients contained in said synthetic detergent or detergents in descending order of predominance as determined by percentage of each ingredient by weight.

   Should any one or more of such ingredients be harmful to any machine dishwasher, machine clotheswasher, or items laundered in either machine, the container, wrapper or other packaging shall clearly and legibly state, in a conspicuous place thereon, in black letters, each letter being no less than one-half (½) inch in height, the following:

   "Warning: This product may cause harm to your _____"

   The dashes represent the words "machine dishwasher"; "machine clotheswasher"; "dishes and utensils"; and "laundry," whichever is applicable, and the manufacturer shall insert the appropriate words depending upon which will be harmed by the ingredients. Should more than one of the items be subject to harm the warning shall list each item.

2. The ordinance defines "detergent and synthetic detergent as follows:

   Any cleaning compound which is available for household use, laundry use or industrial use, which is composed of organic and inorganic compounds including soaps, water softeners, surface active agents, dispersing agents, foaming agents, buffering agents, builders, fillers, dyes, enzymes, and fabric softeners, whether in the forms of crystals, powders, flakes, bars, liquids, sprays or any other form. [Municipal Code of Metropolitan Dade County § 24–44(1)(a)]

3. A preliminary question of standing of the CSMA to represent its members has been raised by the association's own brief. However, Dade County does not challenge the right of CSMA to conduct the suit or this appeal. We agree that CSMA has a sufficient stake in the outcome of this case to assure a spirited, adversarial presentation of the issues. See National Automatic Laundry and Cleaning Council v. Shultz, 1971, 143 U.S.App.D.C. 274, 443 F.2d 689, 693–694.

(iii) the ordinance may *supplement* the federal law and thereby extend or increase the degree of regulation.

■ It is this final category which has traditionally presented the most difficulty. For where Congress has chosen to "occupy" a field, but has not undertaken to regulate every aspect of that area, the states have the implied reservation of power to fill out the scheme. Florida Lime & Avocado Growers, Inc. v. Paul, 1963, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257.

■ Of course, Congress may anticipate this logic and attach an express preemption clause to the regulatory legislation, thereby prohibiting any further action of a supplemental nature by the states or their political subdivisions, Florida Lime & Avocado Growers, Inc. v. Paul, *supra*. In this instance, preemption applies even though there is no direct conflict between the federal law and the state/local ordinance. Congress has done so in the 1966 amendments to FHSA[4] as the legislative history[5] expressly reflects.

■ Given this clear expression of congressional intent to create some form of preemption, the only thing left for us is to determine whether the meaning of the term "precautionary labeling" is sufficiently broad to encompass the words of the ordinance. If so, the ordinance must yield.

In Chemical Specialties Manufacturers Association v. Lowery, 2 Cir., 1971, 452 F.2d 431, 437–438, the Court was concerned with the effects of New York City Fire Department regulations governing the distribution and labeling of aerosol or pressurized containers. It said:

Any restricted reading of "precautionary labeling" not to include such additional labeling as is required under the City Regulations would implicitly suggest that Congress was not concerned with the burdening of interstate commerce, a position clearly re-

---

4. In the 1966 Amendment to the Act Congress specifically spelled out the effect that the Federal law was to have on incongruous state regulations:

*Effect Upon Federal & State Law*

It is hereby expressly declared that it is the intent of the Congress to supersede any and all laws of the States and political subdivisions thereof insofar as they may now or hereafter provide for the *precautionary labeling* of any substance or article intended or suitable for household use (except for those substances defined in sections 2(f)(2) and (3) of this Act) which differs from the requirements or exemptions of this Act or the regulations or interpretations promulgated pursuant thereto. Any law, regulation, or ordinance purporting to establish such a labeling requirement shall be null and void.

Child Protection Act of 1966, Pub.L. No. 89–756 (November 3, 1966), Section 4, 80 Stat. 1303, 1305, (Emphasis supplied).

Preemption is also claimed on the basis of the provisions of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C.A. § 135. But at oral argument it was conceded by Dade County that the portion of the ordinance which restricted substances controlled by FIFRA were invalid, due to revisions by Congress of that statute. These new provisions became effective October 21, 1972.

A scheme of regulation has been adopted under the authority of these acts. The Food and Drug Administration has promulgated regulations under FHSA, found in 21 C.F.R. § 191. The Environmental Protection Agency administers FIFRA through regulations found in 40 C.F.R. § 162.

5. This purpose is clearly expressed in the legislative history of the Amendments.

This Section would add a limited preemption amendment to the act. The amendment would supersede any State or local precautionary labeling laws which differ from the requirements of the Federal act. This would free marketers of products sold interstate from the impractical and unnecessary burden of labeling each such product specially to comply with the requirements developed by States and cities during the years when there was no applicable Federal law, but at the same time it would permit and encourage States to adopt requirements identical with the Federal requirements and to enforce them to complement Federal enforcement.

H.R.Rep.No.2166, 89th Cong., 2d Sess. 6, U.S.Code Cong. & Admin.News 1966, pp. 4095, 4100 (1966).

futed by this legislative history; the flow of commerce in products within the FHSA free of differing labeling requirements was clearly of foremost concern to Congress in enacting the preemption provision. Such a concern would not be served by restricting the express preemption provision to cautionary labeling and sanctioning a proliferation of local requirements with respect to identification labeling. Compare Campbell v. Hussey, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961). In sum, the evidence is strong that Congress used the phrase "precautionary labeling" in the preemption provision in the broad sense of all labeling of hazardous substances covered by the FHSA.

We agree.

Finding no conflict between the Dade County ordinance and FHSA the trial Judge upheld the ordinance. We reverse.

Reading the plain words of the 1966 Amendment to FHSA in light of their legislative history, H.R.Rep.No. 2166, 89 Cong.2d Sess. 6 (1966), and the obvious desirability of a uniform Federal standard, we hold that the Dade County regulation must give way to the supremacy of Federal law. See Chemical Specialties Manufacturers Association, Inc. v. Lowery, *supra*.

Reversed and remanded.

JOHN R. BROWN, Chief Judge (concurring):

As soap, now displaced by latter day detergents is the grist of Madison Avenue, I add these few comments in the style of that street to indicate my full agreement with the opinion of the Court and to keep the legal waters clear and phosphate-free.

As *Proctor* of this dispute between the representative of many manufacturers of household detergents and the Board of Commissioners of Metropolitan Dade County, Florida, who have promulgated regulations which seek to control the labeling of such products sold within their jurisdiction (largely to discourage use which pollutes their waters), the Court holds that Congress has specifically preempted regulatory action by Dade County. Clearly, the decision represents a *Gamble* since we risk a *Cascade* of criticism from an increasing *Tide* of ecology-minded citizens. Yet, a contrary decision would most likely have precipitated a *Niagara* of complaints from an industry which justifiably seeks uniformity in the laws with which it must comply. Inspired by the legendary valor of *Ajax*, who withstood Hector's lance, we have *Bold*ly chosen the course of uniformity in reversing the lower Court's decision upholding Dade County's local labeling laws. And, having done so, we are *Cheer*ed by the thought that striking down the regulation by the local jurisdiction does not create a void which is detrimental to consumers, but rather merely acknowledges that federal legislation has preempted this field with adequate labeling rules.

Congress, of course, has the *Cold Power* to preempt. Of the three situations discussed by the Court, the first (direct conflict) is easy, for it is *Crystal Clear* that the state law must yield. The third, in which the ordinance may *supplement* the federal law and thereby extend or increase the degree of regulation, is more troublesome. For where Congress has chosen to fashion a regulatory scheme that is only the *Head and Shoulders*, but has not opted to regulate every aspect of the area, the states have implied power to flesh out the body. It is where Congress fails to clearly signify, with an appropriate preemption clause, its intent to fully occupy the area regulated that the problem arises. With some *Joy*, the Court finds there is such a clause.

Concerning the precautionary labeling aspect, this is *SOS* to consumers. If we *Dash* to the heart of the question, it is apparent, as the Court points out, that the 1966 Amendments to FHSA (see note 4, *supra*) indicate an explicit congressional purpose to preempt state regulation of the labeling of these substances. Undoubtedly, this unequivocal congressional *Salvo* was directed at such

already existing regulations as those of the Fire Department of New York City relating to pressurized containers. See Chemical Specialties Manufacturers Association v. Lowery, *supra*. Indeed, Congress intended to wield its *Arm and Hammer* to *Wisk* away such local regulations and further, to preclude the growing *Trend* toward this proliferation of individual community supervision. Its purpose was at least two-fold: (i) to put day-to-day responsibility in the hands of local government, but (ii) at the same time to impose detailed identical standards to eliminate confusion or overlapping.

With this clear expression of congressional intent to create some form of preemption, the only thing remaining was whether the meaning of the term "precautionary labeling" is sufficiently broad to embrace the words of the Dade County ordinance, *Vel* non. In making this determination, the Court is furnished with a *Lever* by our *Brothers* of the Second Circuit. Chemical Specialties Manufacturers Association v. Lowery, *supra*. And so we hold. This is all that need be said. It is as plain as *Mr. Clean* the proper *Action* is that the Dade County Ordinance must be superseded, as *All* comes out in the wash.