407 So.2d 613 (1981)
Sam J. LOLLIE, As Administrator of the Estate of Richard Lee Lollie, Deceased; Peggy Lollie, an Individual; and Gerald Wayne Tatsch, Individually and As Administrator of the Estates of Elizabeth Ann Tatsch, Michael Wayne Tatsch and Susan Elaine Tatsch, Deceased, Appellants,
v.
GENERAL MOTORS CORPORATION, a Foreign Corporation, Appellee.
No. JJ-93.
District Court of Appeal of Florida, First District.
October 29, 1981.
Rehearing Denied January 6, 1982.
*614 Stanley Bruce Powell of Powell, Powell & Powell, Crestview, Ken Davis of Davis & Judkins, Tallahassee, Johnson & Christopher, San Antonio, Tex., for appellants.
Spector & Tunnicliff, Tallahassee, Vassar B. Carlton, and E. Thom Rumberger and J. Richard Caldwell, Jr. of Rumberger, Kirk & Caldwell, Orlando, for appellee.
MILLS, Judge.
This is an appeal from a judgment based on a jury verdict in an automobile accident case finding no liability on the part of appellee (General Motors) to appellants (plaintiffs). We affirm.
*615 On 11 November 1973, an accident involving three vehicles occurred in Wakulla County at the intersection of U.S. 319 and State Road 267. Elizabeth Tatsch and her two children, Susan and Michael, were killed in the collision and ensuing fuel-fed fire. Richard Lollie died thirteen days later. Gerald Tatsch and Peggie Lollie were severely burned.
The accident occurred when Bennette, traveling on S.R. 267, ran the stop sign at U.S. 319 and hit the right rear of the Tatsch's 1972 Chevrolet Kingswood Estate Station Wagon, spinning it into the path of the Lollie vehicle. The Lollie vehicle struck the rear of the Tatsch's station wagon, and the station wagon's gas tank ruptured. The Tatsch and Lollie vehicles were engulfed in the ensuing fire. The Bennette Car was not involved in the second collision.
Plaintiffs brought suit against Seabron Bennette, owner of the Bennette vehicle; Felton Bennette, driver of the Bennette vehicle; the Bennette's insurer; and General Motors Corporation, manufacturer of the automobile driven by Tatsch. During the 22-day trial, numerous witnesses testified as to the design and placement of the station wagon's gas tank and its ability or lack thereof to retain gasoline upon impact.
The jury rendered a verdict in favor of the plaintiffs as to defendants Bennette and in favor of defendant General Motors as to the plaintiffs. In this appeal from the final judgment rendered in accordance with the verdict, plaintiffs allege no error as to the determination of the Bennettes' liability but challenge only aspects of the proceedings relating to defendant General Motors.

I
Plaintiffs contend the trial court erred in refusing to give two requested jury instructions concerning negligent failure to warn, one of plaintiffs' theories of recovery. The requested instructions were as follows:
The measure of duty of the distributor of an inherently dangerous product is well established to be the reasonable foreseeability of injury that might result from the use of the product. The care required to be exercised in fulfilling this duty to warn is measured by the dangerous potentiality of the product as well as the foreseeable uses to which it might be put. When a distributor of an inherently dangerous product places it in the channels of trade and by the very nature of his business, it assumes the duty of conveying to those who might use the product the fair and adequate warning of its dangerous potentialities to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use and even misuse.
Implicit to the duty to warn is the duty to warn with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential damages.
We agree with the trial court's refusal to give the requested instructions because they are not applicable under the facts of this case. The key in this determination is that an automobile is not an inherently dangerous product, as defined in Tampa Drug Company v. Wait, 103 So.2d 603 (Fla. 1958), the case cited as the authority for the requested instructions. The court in Wait specifically asserted that it was not dealing with a defective article, but rather "a commodity burdened with a latent danger which derives from the very nature of the article itself." There the court was dealing with the use of carbon tetrachloride, a product which "appears harmless in and of itself, [but] has lurking in its innocent appearance death-dealing potentialities."
Although an automobile has long been held to be a dangerous instrumentality, it is so because of the dangers in its use and operation, not because it is dangerous in and of itself. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). See also, dissenting opinion by Letts, J., in Ford Motor Co. v. Havlick, 351 So.2d 1050 (Fla. 4th DCA 1977).
Given the phrasing of the requested instructions, the discussion of them at the *616 charge conference, and the argument concerning them as set forth in the briefs, there is some uncertainty in our minds as to whether the "inherently dangerous product" referred to is simply the automobile or whether it is actually the fuel storage tank in the automobile. Note, for example, that the instruction actually given focuses on the design and manufacture of the fuel storage tank. On the question of whether the fuel storage tank itself is an "inherently dangerous product", we find this court's opinion in Dayton Tire and Rubber Co. v. Davis, 348 So.2d 575 (Fla. 1st DCA 1977), reversed on other grounds, 358 So.2d 1339 (Fla. 1978), most helpful. There, in a case involving an allegedly defective tire, the trial court had given an instruction containing much of the exact language requested in this case and the cause was reversed. Reviewing the standard set forth in Wait, the court specifically noted that the fact that a product becomes dangerous due to a defect does not make it an inherently dangerous commodity, one that is dangerous in and of itself.
The types of commodities that have been held to come within the Wait standard and do, therefore, impose a strict duty to warn are highly toxic materials, dynamite, second-hand guns, and drugs. Dayton Tire and Rubber Co. v. Davis, supra. Just as an automobile tire cannot be said to be dangerous in and of itself in the same manner as carbon tetrachloride or dynamite, neither can an automobile fuel storage tank.
Under the circumstances, the jury instructions requested in this case were properly denied. The giving of the requested instructions might, in fact, have been error, as it was in Dayton Tire, because it would have invaded the province of the jury by asserting that as a matter of law the automobile, or the fuel storage tank, was an inherently dangerous product and there was, therefore, a strict duty to warn. See Dayton Tire and Rubber Co. v. Davis, supra, at 582.
In arguing this issue on appeal, plaintiffs have urged that the instructions the court did give were misstatements of the law. The relevant instructions given by the court were as follows:
The issues for your determination on the negligence claim of plaintiffs against the defendant, General Motors Corporation, are whether the defendant was negligent in the design and manufacture of the fuel storage tank of the 1972 Kingswood Estate Station Wagon in question or in failure to warn of a dangerous condition, if any, and, if so, whether such negligence was a legal cause of injury or damage sustained by the plaintiffs. [Emphasis supplied]

Some automobile collisions and resulting injuries are foreseeable as an incident to normal and expected use of an automobile and while automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in some collisions and injury producing impacts. [Emphasis supplied]
There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well-known to the user as they are to the manufacturer. The manufacturer is entitled to assume that the user will perceive that which would be obvious to him in the ordinary use of his own senses, and he is not required to give warning of an obvious danger.
Regarding the first of these three instructions, the trial court, without objection, specifically inserted the phrase "or in failure to warn of a dangerous condition, if any" into the instruction given during and because of consideration of the requested instructions.
As for the second instruction, plaintiffs complain of the trial court's modification of the language from Ford Motor Co. v. Evancho, 327 So.2d 201 (Fla. 1976), by the addition of the qualifying word "some." A review of the transcript reveals that during the charge conference the judge announced his intention to add the word "some" to what was a requested instruction by plaintiffs and there was no objection made by plaintiffs.
Similarly, as to the claim that the third instruction concerning "obvious danger" is *617 a misstatement of the law, General Motors urges that there was no objection made to that instruction. Plaintiffs have not responded by citing us to any record reference where an objection was made and our own review of the record fails to disclose one.
Where during the conference on instructions to the jury a party fails to object to the court's instruction, an objection to the instruction may not be raised for the first time on appeal. Zutell v. Sunrise Oldsmobile, Inc., 252 So.2d 822 (Fla. 1st DCA 1971); see also Rule 1.470(b), Fla.R.Civ.P. We decline, therefore, to rule on plaintiffs' challenge to the jury instructions noted above.

II.
Plaintiffs' next contention challenges the admission into evidence of Federal Motor Vehicle Safety Standard (FMVSS) 301 coupled with the court's refusal to instruct on the federal law implementing the standard and customary negligence.
FMVSS 301 is the only federal standard concerning fuel tank performance. It requires that in a frontal impact into a fixed barrier at 30 m.p.h. fuel leakage shall not exceed one ounce per minute. Plaintiffs concede that the vehicle in question met that standard, but urge that the standard was not relevant because the impact at issue in this case was a rear-end collision. This contention is without merit. At issue in this case was the manufacture and design of the automobile fuel tank. The only minimum standard promulgated by the federal government regarding performance of the fuel tank was FMVSS 301. Accordingly, the standard was relevant to the issue of fuel tank security.
As for the denial of requested jury instructions on this issue, the requested instructions were as follows:
I have previously read to you the requirements of Federal Motor Vehicle Standard 301, which is a federal regulation. In that regard, I also instruct you that Title 15, Section 1397(c) of the United States Code provides as follows:
"Compliance with any Federal Motor Vehicle Safety Standard issued under this sub-chapter does not exempt any person from liability under common law."
If the standards practiced by a party or others in a similar industry were complied with, this is not conclusive proof that the party exercised due care. In other words, compliance with prevailing industry standards does not justify negligence and if an act is inherently negligent it cannot be justified by a showing that a party was customarily negligent in the performance of similar acts.
Firstly, it should be noted, the trial judge had not "previously read ... the requirements" of FMVSS 301 as stated in the proposed instruction. The standard was simply entered into evidence along with all of the other exhibits.
Secondly, plaintiffs' argument as to why it was error to refuse the instruction relies on two cases, H.P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 345 N.E.2d 683 (1976), and Buccery v. General Motors Corp., 60 Cal. App.3d 533, 132 Cal. Rptr. 605 (1976), both of which involved a claim that compliance with the federal standard was a legal defense. No such claim has been asserted here.
In closing argument counsel for General Motors argued:
There is no deviation from any standard. The government had a standard, a minimum standard, but the government had a standard; and this vehicle passed that standard. It does not mean that negligence couldn't be found simply because the standard is passed, but the standard is indicative of what is reasonably required.
This does not unfairly "stuff the standard down plaintiffs' throat" (to paraphrase the brief); it is fair argument.
As for the denial of the second requested instruction, there was no implication in the other instructions or in the arguments or evidence that compliance with *618 prevailing industry standards was conclusive proof of due care.
Taking the jury instructions as a whole, we do not believe that plaintiffs have demonstrated that the jury was misled. Even if there was error in the trial court's refusal to give the requested instructions, it was harmless.

III.
The final contention is whether comments by counsel for General Motors constituted prejudicial misconduct. This issue has not been preserved for review.
Since voir dire is not included among the many volumes of record provided, we are unable to review the comments made during voir dire, their context, the objections, if any, or the trial court's ruling. As for alleged improper comments during opening and closing arguments, the record reveals that while counsel for the Bennettes objected to the comments cited, there was no objection on behalf of the plaintiffs. Even if there had been proper objection, we do not believe that the comments were so egregious as to require a new trial.
We do express displeasure at counsel for General Motors referring to a party who had pleaded guilty to manslaughter as an "admitted murderer." We find counsel's glib use of the terms manslaughter and murderer interchangeably, in feigned innocence, to be offensive and inexcusable, particularly in light of his own recognition that the remark was "inflammatory."
The judgment is affirmed.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.

ON PETITION (Motion) FOR REHEARING DENIED
MILLS, Judge.
By their petition (motion) for rehearing, appellants (plaintiffs) contend that the Court overlooked or failed to consider that they objected to the giving of General Motors' requested jury charge number 37. The Court did neither.
In their initial brief, plaintiffs did not indicate whether they made an objection. In its answer brief, General Motors contended no objection was made and plaintiffs did not deny this in their reply brief.
The Court searched the voluminous record in this case and failed to find an objection or at least a legally sufficient objection.
The record reveals the following pertinent colloquy between the trial court and plaintiffs' counsel at the conference on jury instructions:
"THE COURT: I don't care. I like the language of 37 better than 32. Granted, you don't want either one of them, Mr. Davis, but if there are two, which one? If you have to have one, which one? This is a warning.
MR. DAVIS: Your observation of 37 is that it's a little bit fairer statement of the law?
THE COURT: I like 37 because it covers both manufacturing as well as the notice aspect of it. I would rather give 37 than 32.
MR. DAVIS: Well, Judge, 32 really goes a lot further than 37. 37 speaks only to dangers that are obvious. Now, 32 goes into the manufacturer acting reasonably to make the product function properly for its intended purpose.
THE COURT: We said that. I'm going to give 37 instead of 32. I will give 37, and I will deny 32.
MR. DAVIS: We still maintain our objection.
THE COURT: I understand.
.....
THE COURT: All right. 38.
MR. BOOTH: Object.
THE COURT: I'm going to deny that. 39.
MR. BOOTH: Object.
THE COURT: I have already given that.
MR. DAVIS: Right.
MR. BOOTH: Prevailing industry standards.
MR. CALDWELL: Read Further. Read the whole thing.

*619 MR. BOOTH: Prevailing industry standards is not the test. Object to it.
THE COURT: Mr. Booth, you better go back and look at another one I gave. I don't remember if it's objected to, but I think you better.
MR. DAVIS: Judge, we have objected to every single one of them.
THE COURT: It's their Number 27.
All right. 39. Well, I have already given that one, or at least the one that I'm going to give in that regard, so I will deny this one. 40. The same. Denied.
MR. DAVIS: Wait a second, Judge.
THE COURT: 41. Denied
42. I'm sorry. Let me give you all time to object. You have objected so far to every instruction, so at least let me hear your objection.
MR. BOOTH: I object to both of them.
THE COURT: Do you have an objection?
MR. JUDKINS: We object for the reason that you denied it, Judge.
THE COURT: I haven't denied 42 yet.
The purported objection made following the trial court's announcement that it would give 37 but deny 32 means little or nothing. The Court cannot determine whether plaintiffs objected to the giving of 37; the denial of 32, both or neither. Nor can the Court ascertain from the record the grounds for the objection.
Rule 1.470(b), Florida Rules of Civil Procedure, requires that objections to charges must be made at the conference to settle charges and that no party may assign as error the giving of a charge unless he objects.
"An objection which fails to state distinctly the portion or omission or failure to instruct to which objection is made and the specific ground of such objection is not sufficient compliance with the rule." Henningsen v. Smith, 174 So.2d 85 (Fla.2d DCA 1965).
Plaintiffs' petition (motion) for rehearing is denied.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.