29 F.3d 1480
 Prod.Liab.Rep. (CCH) P 13,975
John J. HUNNINGS, and wife, Donna Hunnings, Individually and
as Co-Personal Representatives of the Estate of
David B. Hunnings, deceased,
Plaintiffs-Appellants, Cross-Appellees,
v.
TEXACO, INC., Kerr-McGee Refining Corp., Union Oil Company
of California, Shell Oil Company,
Defendants-Appellees, Cross-Appellants,
Hunt Refining Co., and Whitaker Oil Company, Defendants-Appellees,
Hill Petroleum Company, Defendants.
 No. 93-2057.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 12, 1994.
 
 Edmond D. Quintana, Panama City, FL, for appellants.
 John M. Fite, Panama City, FL, for Hunt Refining Co.
 Michael Joel Pugh, Pensacola, FL, W.H.F. Wiltshire, Pensacola, FL, for Kerr-McGee.
 Danny L. Kepner, Pensacola, FL, for Whitaker Oil Co.
 Don H. Lester, Jacksonville, FL, for Phibro.
 Appeal from the United States District Court for the Northern District of Florida.
 Before KRAVITCH and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The plaintiffs in this diversity action, John J. and Donna Hunnings, individually and as personal representatives of the estate of their son, David B. Hunnings, appeal from the judgment of the United States District Court for the Northern District of Florida dismissing their complaint for failure to state a claim upon which relief can be granted. Four of the defendants, various manufacturers and bulk distributors of mineral spirits, filed a cross-appeal from the district court's finding that federal law does not preempt the plaintiffs' Florida law causes of action. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 2
 This case concerns the tort liability of bulk manufacturers and distributors of mineral spirits, which were packaged illegally at the retail level in used one-half gallon milk containers[1] and were purchased by Donna Hunnings for use as a paint brush cleaner. The plaintiffs filed this action after their twenty-one-month-old son, David, drank some of the solvent from the container and subsequently died.
 
 
 3
 All of the defendants, except for Whitaker Oil Co. ("Whitaker"), are manufacturers of mineral spirits, which they sold in bulk to Whitaker by delivering the product to Whitaker's holding tank, where it was mixed with other mineral spirits. Whitaker is a distributor of mineral spirits and as such transferred the commodity in bulk to Miller Agency, Inc., by placing it in that company's holding tank. Miller Agency, Inc. then marketed the solvent in fifty-five gallon drums to Miller Marine, Inc., which in turn, sold the filled drums to Sizemore's Ace Hardware, the store where Donna Hunnings purchased the mineral spirits packaged in a used milk container.[2] The plaintiffs brought this action pursuant to a market share theory of liability authorized by Florida law in certain negligence cases where there is an inherent inability to identify the specific manufacturer of the substance that caused the harm. See Conley v. Boyle Drug Co., 570 So.2d 275 (Fla.1990).
 
 
 4
 The complaint alleged that the defendants knew or should have known that it is a customary practice to sell mineral spirits at the retail level in used milk containers without adequate warning of their contents, which renders the solvent unreasonably dangerous for its foreseeable use in households with young children. The plaintiffs advanced two theories of liability. Count I asserted that David's death and the plaintiffs' resulting damages were proximately caused by the defendants' negligent marketing of the product, which allowed Sizemore's Ace Hardware to sell the liquid in a milk container which bore no warnings or statements concerning its hazardous nature. Count II set forth a strict liability cause of action based upon the plaintiffs' contention that the product was defective due to the defendants' failure to provide instructions for its packaging by retailers.
 
 
 5
 Each named defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. They maintained, inter alia, that the plaintiffs' state law causes of action were preempted by the Federal Hazardous Substances Act, 15 U.S.C. Secs. 1261-77 ("FHSA"), and the Poison Prevention Packaging Act of 1970, 15 U.S.C. Secs. 1471-76 ("PPPA"). In addition, they contended that the plaintiffs could not recover, as a matter of Florida law, on their negligence and strict liability causes of action.
 
 
 6
 The district court found that neither the FHSA nor the PPPA preempted the state law claims because those statutes, which regulate the packaging of commodities in a form suitable for household use, did not extend to the bulk transfer of the mineral spirits at issue here. It, consequently, denied the motion to dismiss predicated upon preemption.
 
 
 7
 Next, the court considered whether the complaint stated a viable cause of action for negligence in accordance with Florida law. In doing so the court recognized that, in appropriate circumstances, a bulk seller may discharge its duty to warn of unreasonable dangers involved in the foreseeable use of a product by passing the requisite information down the chain of distribution through its immediate bulk purchaser. See, e.g., Shell Oil Co. v. Harrison, 425 So.2d 67 (Fla.Dist.Ct.App.), review denied, 436 So.2d 98 (Fla.1983). It held, however, that the bulk manufacturers and distributors in the present case had no such duty to warn against the hazards of ingesting mineral spirits because the danger attendant to doing so is common knowledge. See Knox v. Delta Int'l Mach. Corp., 554 So.2d 6, 7 (Fla.Dist.Ct.App.1989) (manufacturers have no duty to warn consumers of obvious dangers); Clark v. Boeing Co., 395 So.2d 1226, 1228-29 (Fla.Dist.Ct.App.1981) (same). The court stated that because the danger is well known to all, the sellers at each level of distribution were equally capable of taking appropriate precautions with regard to their immediate purchasers. The court observed that it is similarly well known that without proper supervision, small children are likely to open containers which hold harmful substances and that the plaintiffs, who were also aware of the harm that could come to their son through ingesting the solvent, were in a position to guard against this eventuality. The court held further that bulk distributors of hazardous substances are entitled to presume that the retail sellers of their products will comply with the labeling and packaging requirements imposed by law for distribution at that level. In the court's view, to hold otherwise would unduly burden manufacturers and bulk sellers with the responsibility of enforcing the laws and regulations governing retail sales.
 
 
 8
 The court concluded that (1) because the law imposed no duty upon the defendants to warn downstream distributors of the apparent dangers of ingesting mineral spirits; and (2) because the defendants could presume that the product was being sold at the retail level in a legal manner, the plaintiffs could not state a claim against the defendants grounded upon negligence. It found that the absence of negligence on the part of the defendants was fatal to plaintiffs' strict liability count as well. The court, therefore, entered an order dismissing the complaint with prejudice for failure to state a claim.
 
 II. DISCUSSION
 
 9
 In ruling on a motion to dismiss for failure to state a claim, the district court must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff. Fortner v. Thomas, 983 F.2d 1024, 1027 (11th Cir.1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Patuala Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). Our review of a dismissal for failure to state a claim is de novo. Id.; Fortner, 983 F.2d at 1027. Because the district court's jurisdiction of this action was based upon diversity of citizenship, 28 U.S.C. Sec. 1332, we are guided by Florida law in determining whether the complaint stated a claim for relief. See Broyles v. Bayless, 878 F.2d 1400, 1402 (11th Cir.1989).
 
 A. Negligence
 
 10
 We begin our analysis by recognizing, as did the district court, that mineral spirits is an "inherently dangerous commodity; that is, a commodity burdened with a latent danger which derives from the very nature of the article itself."[3] Tampa Drug Co. v. Wait, 103 So.2d 603, 608 (Fla.1958); see also Advance Chem. Co. v. Harter, 478 So.2d 444, 447 (Fla.Dist.Ct.App.1985), review denied, 488 So.2d 829 (Fla.1986).[4] Mineral spirits is similar in nature to the chemical, carbon tetrachloride, the inhalation of which led to the death of the plaintiff's decedent in Tampa Drug Co., supra. The court described that product as a clear liquid with a sharp odor similar to that of chloroform, which has many useful purposes when properly employed. However, exposure to the chemical, through internal ingestion, inhalation or prolonged contact with the skin can be fatal. Tampa Drug Co., 103 So.2d at 608. See Bean v. Carey's Rental Agency, Inc., 532 So.2d 685, 686 (Fla.Dist.Ct.App.1988) (plaintiff's eighteen-month-old child died after spilling mineral spirits on himself and inhaling the noxious fumes). The court observed that "although the product appears harmless in and of itself, it has lurking in its innocent appearance death-dealing potentialities." Tampa Drug Co., 103 So.2d at 608. With respect to this type of product, the court held "that the law imposes upon the distributor a duty to the using public. This duty simply is to take reasonable precautions to supply users with an adequate warning notice that would place them on their guard against the harmful consequences that might result from use of the commodity." Id.; see also Advance Chem. Co., 478 So.2d at 447 ("The distributor of a commodity inherently burdened with potential danger has the duty to take reasonable precautions to avoid reasonably foreseeable injuries to those who might use the commodity.").
 
 
 11
 Whether a manufacturer or distributor of a commodity has taken "reasonable precautions" to avoid foreseeable injuries depends upon the particular circumstances of each case. The plaintiffs argue on appeal that the district court erred by failing to accept their allegation that the defendants knew their product was being routinely sold in milk containers at the retail level which lacked adequate warnings as required by law. We agree. As stated earlier, in construing the sufficiency of the complaint, the district court was required to acknowledge as true the circumstances as alleged by the plaintiffs. Further, implicit in the court's ruling is an erroneous finding that bulk sellers are entitled to immunity for damages proximately caused by retailers because they are not charged by law with the responsibility for packaging at that point of the marketing journey. However, manufacturers do not enjoy blanket protection from liability simply because others in the chain of distribution may repackage or reformulate the product before it reaches the ultimate consumer. See, e.g., Lakeman v. Otis Elevator Co., 930 F.2d 1547, 1551 (11th Cir.1991) (construing Alabama law). "If a manufacturer knows or should know that downstream distributors are not giving adequate warnings to the end user of a product, then the bulk manufacturer may be held liable for failing to take appropriate action." Id.; see also Restatement (Second) of Torts Sec. 388 cmt. 1, n (1965) (adopted by Florida in Tampa Drug Co., 103 So.2d at 607; see Sowell v. American Cyanamid Co., 888 F.2d 802, 804 (11th Cir.1989)).
 
 
 12
 Assessing a bulk distributor's duty to take reasonable precautions in light of its actual knowledge of how the product is marketed to the public does not necessarily impose upon it a duty to enforce the laws aimed at protecting retail purchasers. As the district court correctly recognized, citing Shell Oil Co., supra, and Zunck v. Gulf Oil Corp., 224 So.2d 386 (Fla.Dist.Ct.App.1969), Florida courts have held that where a product is packaged and labeled for retail sale by others, a bulk distributor may, in appropriate circumstances, discharge its duty by passing the requisite information down the chain of distribution through its immediate bulk purchaser. The circumstances of those cases, however, are distinguishable from the facts alleged in the case presently before us.
 
 
 13
 In Zunck, the court held that a manufacturer and a wholesale distributor of odorless liquid petroleum gas had no duty to odorize the gas to warn of leakage prior to its distribution to the ultimate user, where the retailer, which knew that the gas was not odorized, had installed a mechanical device to add the odorant each time its storage tank was filled and had deliberately undertaken the duty to do so. Zunck, 224 So.2d at 387-88. Although the court noted that the bulk distributors' reliance upon the retailer for fulfilling this duty was supported by Florida's administrative interpretation of the National Fire Protection Association Standard No. 58, which placed the responsibility for odorizing gas upon the retailer, see id., there was no allegation in Zunck, as there is here, that the retailer routinely failed to comply with its regulatory duty such that the bulk distributors were on notice that the product was reaching the public in an unsafe manner. The court held only that the bulk sellers had no nondelegable duty to odorize, provided that they took "the necessary precautions commensurate with the dangers reasonably anticipated under the circumstances." Id. at 388. The manufacturer and the bulk distributor were protected in Zunck because they had informed the retailer that the gas was not odorized and knew that the retailer had undertaken that obligation. Id.
 
 
 14
 The Shell Oil Co. case concerned the liability of a bulk manufacturer and supplier of a chemical known as 1, 2-Dibromo-3-Cholopropane ("DBCP"), which it marketed under the trade name Nemagon. See Shell Oil Co., 425 So.2d at 68. Shell Oil Company ("Shell"), sold the product to Kerr-McGee Chemical Corporation ("Kerr-McGee") in thirty-gallon steel containers. Kerr-McGee reformulated the chemical for various applications, including a product containing 70% DBCP, which it packaged in one-gallon glass jars and marketed as a lawn pesticide through retail dealers under the name Fasco Nemagon 70EC. During the 1960s and 1970s, problems arose over the use and storage of Nemagon in or around the home. The Environmental Protection Agency ("EPA) eventually determined that products containing more than 20% DBCP were unsafe for home use and that receptacles of less than one gallon were considered to be for the home market. Thereafter, Shell added to the label on its thirty-gallon containers a warning that stated "not for use or storage in or around the home." Shell kept its immediate customers apprised of the continuing concerns over the possible harmful effects of Nemagon and ultimately decided to suspend its manufacture and distribution of the product. By letter, it recommended to Kerr-McGee and other customers that further sales, reformulations and shipments of the chemical be suspended. It also instructed its immediate purchasers to notify their employees and customers of these developments. That same week, Shell issued a press release announcing that it would recall the product from its distributors and seek their assistance in obtaining the return of the chemical already in the hands of dealers and growers. In a follow-up letter to Kerr-McGee, Shell again requested that it pass this information on to its employees and customers and urge them to return their supplies of the substance. Id. at 68.
 
 
 15
 In 1980, a glass jar containing Fasco Nemagon 70EC, which had escaped this recall effort and was stored in the plaintiffs' garage, fell off a shelf and broke. The plaintiffs and their children were forced to vacate their home due to the ensuing strong odor, which permeated the area. Id. at 68-69. They filed suit alleging, inter alia, that Shell, as the manufacturer and bulk supplier of a dangerous toxic component had a nondelegable duty to warn the ultimate users of products containing the chemical of the hazards associated with it. The court determined, however, that Shell was entitled to a directed verdict. Id. In so holding, the court recognized that the federal regulatory scheme established by the EPA placed the responsibility for consumer warnings upon the formulator because the requirements for labeling and packaging necessarily differed depending upon the particular configuration of the product. Id. at 70. The court held that "Shell, as the manufacturer or supplier selling in bulk to one other than an ultimate consumer, took the necessary precautions commensurate with the dangers reasonably anticipated under the circumstances." Id.
 
 
 16
 By contrast, in the present case, it is alleged that the defendants did nothing in the face of their knowledge that mineral spirits are commonly sold illegally in retail stores in used milk containers that bear no warnings of their dangerous propensities. Furthermore, there is no evidence that the commodity at issue here was reformulated by other distributors so as to make it impractical for the manufacturers to disseminate precise warnings.
 
 
 17
 A manufacturer's duty to take "reasonable precautions" to guard against the foreseeable harmful consequences that might result from the use of an inherently dangerous product must be measured against its knowledge of the circumstances by which the product reaches the public. For purposes of the defendants' motions to dismiss, therefore, the district court was required to consider whether, as a matter of Florida law, the defendants, possessed of this knowledge, had no duty to take action.
 
 
 18
 The court found no right of recovery in this case because the dangers of ingesting mineral spirits are well known to all and manufacturers have no duty to warn consumers of obvious hazards. As we have stated, mineral spirits is a "commodity burdened with a latent danger."[5] David Hunnings certainly had no realization of the "obvious" risk when he drank the liquid contained in the milk jug.[6] Also, under Florida law, the obvious nature of the risk involved "may only serve as a bar to liability 'where the complaint alleges that the negligence is solely in the lack of a warning[.]' " Mosher v. Speedstar Div. of AMCA Int'l, Inc., 979 F.2d 823, 826 (11th Cir.1992) (quoting Babine v. Gilley's Bronco Shop, Inc., 488 So.2d 176, 178 (Fla.Dist.Ct.App.1986)). The plaintiffs point out on appeal, that their negligence claim is not confined to a failure to warn of the hazards of ingesting of mineral spirits, but on the defendants' negligent marketing of the product; that is, their failure to "take reasonable precautions" in keeping with their knowledge of the retailers' conduct. Taking "reasonable precautions" may or may not include the dissemination of such warnings. It could also encompass instructing downstream distributors to notify retailers to discontinue the practice of packaging mineral spirits in milk containers, see Tampa Drug Co., 103 So.2d at 607-08 (recognizing distinction between directions and warnings), or curtailing business with customers who were known to distribute the product to errant retailers.[7] We need not decide what might constitute reasonable precautions commensurate with the circumstances of this case. We emphasize only that this is not a pure failure-to-warn case.
 
 
 19
 Because the defendants' alleged negligence is not predicated alone on a failure to warn, the "patent danger" or "open and obvious hazard" doctrine, as it is known, cannot serve as a bar to liability. Rather, it is a defense by which the manufacturer may invoke the principles of comparative negligence by showing that the plaintiffs did not exercise a reasonable degree of care as required under the circumstances.[8] Id. at 825-26; Auburn Mach. Works Co., Inc. v. Jones, 366 So.2d 1167 (Fla.1979). Under Florida law, comparative negligence "goes to apportion, not bar, liability." Worthington v. United States, 21 F.3d 399, 407 (11th Cir.1994). For the foregoing reasons, it was error for the district court to hold that the complaint failed to state a claim because of the obviousness of the hazard.
 
 
 20
 It was likewise error for the court, in construing the sufficiency of the complaint, to consider the plaintiffs' possible carelessness in failing to keep the mineral spirits out of the reach of their son. Their actions must also be judged in accordance with the rules of comparative negligence and, thus, cannot serve as a basis for dismissing the complaint for failure to state a claim.[9] See Fla.Stat.Ann. Sec. 768.81(2); see also Bean, 532 So.2d at 686 (the issue of whether a mother's conduct in placing an open plastic soda bottle containing mineral spirits within easy reach of her child was the sole proximate cause of the child's death was for the jury to decide).
 
 
 21
 For the foregoing reasons, we reverse the district court's dismissal of Count I of the complaint for failure to state a claim upon which relief can be granted. We cannot say on the basis of the complaint that it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief.
 
 B. Strict liability
 
 22
 The district court found that because the plaintiffs could not prove that the defendants were negligent, their claim of strict liability must fail as well. Having found that the court improperly dismissed the negligence cause of action, we cannot affirm the dismissal of the strict liability count on this premise. Nevertheless, we agree there is no right of action alleged for strict liability under Florida law.
 
 
 23
 As stated earlier, the plaintiffs brought this action under a market share theory of liability because the mineral spirits purchased by Donna Hunnings could not be traced to a particular defendant. Florida has recognized market share liability "as a theory of last resort, 'developed to provide a remedy where there is an inherent inability to identify the manufacturer of the product that caused the injury.' " Conley, 570 So.2d at 285 (quoting Celotex Corp. v. Copeland, 471 So.2d 533, 537 (Fla.1985)). The Supreme Court of Florida has restricted "this vehicle of recovery to those actions sounding in negligence; it may not be used in conjunction with allegations of fraud, breach of warranty or strict liability." Id. at 286. We, therefore, affirm the court's dismissal of Count II of the complaint, grounded in strict liability. See Novak v. Irwin Yacht & Marine Corp., 986 F.2d 468, 470 (11th Cir.1993) (stating that we may affirm on any legal grounds, regardless of the grounds addressed, rejected or adopted by the district court).
 
 C. Preemption
 
 24
 The defendants' argument that the FHSA and the PPPA preempt the plaintiffs' common law claims does not warrant extended discussion. Those statutes and the regulations promulgated thereunder establish standards for labeling and packaging hazardous substances prior to their distribution to households. See 15 U.S.C. Secs. 1261(f), (n), 1263 (FHSA); 15 U.S.C. Secs. 1471(2)(A), (3)-(5), 1472 (PPPA). In 1966, Congress amended the FHSA to add a clause which explains the preemptive effect of the statute on state law. See Chemical Specialties Mfrs. Ass'n, Inc. v. Clark, 482 F.2d 325, 327 n. 4 (5th Cir.1973). In Clark, the court found that this express preemption clause prohibits states and political subdivisions from supplementing the FHSA's labeling requirements. Id. at 327.[10] The PPPA also contains a preemption provision which expressly prohibits the establishment of state standards different from those required under the federal law, except in particular narrow circumstances. See 15 U.S.C. Sec. 1476.
 
 
 25
 The defendants urge that these federal statutes expressly preempt state common law causes of action against bulk sellers for improper packaging or labeling. As the district court determined, however, the federal requirements regulate the retail distribution of hazardous substances and, therefore, have no application to the bulk transfers at issue here. Put another way, the aim of this action is not to establish state labeling or packaging requirements different from, or in addition to, those required of retailers by the FHSA and the PPPA.
 
 
 26
 We decline the defendants' invitation to conduct an implied preemption analysis. See Myrick v. Freuhauf Corp., 13 F.3d 1516, 1523 (11th Cir.1994) ("[W]here, as here, there is an express pre-emption provision, which constitutes a reliable indicium of congressional intent, implied pre-emption analysis has no place."). The defendants' remaining arguments with respect to preemption are equally without merit. We, therefore, affirm the district court's refusal to dismiss the complaint on preemption grounds.
 
 III. CONCLUSION
 
 27
 In keeping with the foregoing analysis, we REVERSE the dismissal of Count I of the complaint for failure to state a claim and REMAND the case to the district court for further proceedings consistent with this opinion. We AFFIRM the dismissal of Count II of the complaint, as well as the district court's finding on preemption, and DENY the defendants' cross-appeal.
 
 
 
 [1]
 Several Xs and the words "Mineral Spirits" were written across the milk container. The Federal Hazardous Substances Act ("FHSA") prohibits the introduction of a hazardous substance into interstate commerce in a reused food container. 15 U.S.C. Sec. 1263(f). Mineral Spirits is a hazardous substance within the meaning of the FHSA. 16 C.F.R. Sec. 1500.14(a)(3)
 
 
 [2]
 Miller Agency, Inc., Miller Marine, Inc. and Sizemore's Ace Hardware were not named as defendants in this action. The district court's order indicates that the plaintiffs settled any claims they may have had against these entities
 
 
 [3]
 Although the Supreme Court of Florida has characterized the phrase "inherently dangerous" as "merely a descriptive, factual conclusion, largely of historical interest, which has lost most of its utility with the evolution of products liability law and the adoption of strict liability[,]" Radiation Technology, Inc. v. Ware Constr. Co., 445 So.2d 329, 331 (Fla.1983), it is helpful to our understanding of the Florida law governing the duties owed by the manufacturers or distributors of such products to use the expression in referring to a claim of negligence
 
 
 [4]
 Mineral spirits is a petroleum product which can be used in various capacities, such as a solvent for cleaning, or as a fuel. Hayes v. Spartan Chem. Co., 622 So.2d 1352, 1354 (Fla.Dist.Ct.App.1993); Commercial Coating Corp. v. State, 548 So.2d 677, 678 (Fla.Dist.Ct.App.1989), review denied, 560 So.2d 232 (Fla.1990); see also Bean v. Carey's Rental Agency, Inc., 532 So.2d 685, 686 (Fla.Dist.Ct.App.1988) (describing mineral spirits as "a hazardous paint thinner")
 
 
 [5]
 The district court found that, notwithstanding the inherently dangerous character of mineral spirits, the product harbors no latent hazards. These findings are inconsistent by definition. As the court held in Tampa Drug Co., an inherently dangerous product is one "burdened with a latent danger which derives from the very nature of the article itself." 103 So.2d at 608
 
 
 [6]
 It was foreseeable that the improperly packaged product, sold specifically for household use, would come into contact with a young child, such as David, who was unable to appreciate the hazards
 
 
 [7]
 The district court's finding that there was no method by which the defendants could control the distribution of their product improperly assumes facts not in evidence
 
 
 [8]
 Foreseeable product misuse is also an element of comparative negligence that does not necessarily bar recovery under Florida law. Mosher, 979 F.2d at 825
 
 
 [9]
 The defendants insist on appeal that their alleged negligence did not proximately cause the harm due to the intervening negligence of the plaintiffs and Sizemore's Ace Hardware. This court recently determined that under Florida law, the issue of whether the intervening conduct of others can be viewed as breaking the chain of causation turns on whether it is "so bizarre and extraordinary, or so far beyond the realm of foreseeability, that as a matter of fairness and policy it should relieve [the] defendant of all liability." Worthington, 21 F.3d at 406. If not, "the scenario simply calls into play established principles of comparative negligence." Id. at 406. We cannot say, at this stage of the case, whether the conduct of the plaintiffs or of Sizemore's Ace Hardware was within the scope of this standard
 
 
 [10]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), this circuit adopted as precedent all decisions of the former United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981