879 So.2d 42 (2004)
UNION CARBIDE CORPORATION, Appellant,
v.
Dennis M. KAVANAUGH and Ingeborg Kavanaugh, his wife, Appellees.
No. 4D03-2956.
District Court of Appeal of Florida, Fourth District.
June 23, 2004.
Rehearing Denied August 25, 2004.
*43 John Pelzer of Ruden, McClosky, Smith, Schuster & Russell, Fort Lauderdale, and Michelle Jerusalem Cole of Alston & Bird LLP, Charlotte, North Carolina, for appellant.
Joel S. Perwin of Podhurst Orseck, P.A., David Jagolinzer and James L. Ferraro of Ferraro & Associates, P.A., Miami, for appellees.
POLEN, J.
This appeal is brought by Union Carbide Corporation (UCC) from a final judgment awarding the Kavanaughs $1,153,000.00 in damages based on a product liability action involving asbestos exposure. We affirm the order of the trial court in all regards.
The underlying facts are lengthy and need not be discussed in great detail for purposes of this opinion. However, it is relevant that Dennis Kavanaugh began working as a carpenter in West Palm Beach in 1969. He alleged that he was exposed to asbestos during his employ as a carpenter when he sanded joint compound which contained asbestos. He primarily used "Ready Mix" joint compound manufactured by Georgia-Pacific, another named defendant. UCC manufactured the asbestos and supplied Georgia-Pacific with the asbestos that eventually ended up in the "Ready Mix" joint compound.
On August 21, 2002, plaintiffs Dennis and Ingeborg Kavanaugh filed a complaint against thirty-two named defendants. Among the defendants was UCC. The first trial concluded in a mistrial with a hung jury. At the conclusion of the second trial, the jury found that UCC's negligence was the legal cause of Dennis Kavanaugh's injury. They found UCC 100% liable.
UCC raised numerous issues on appeal. Although we find no reversible error in any of the issues raised by UCC, we write to discuss the issue of bulk supplier liability.
UCC contends the trial court erred as a matter of law in denying its motion for directed verdict on Kavanaugh's failure to warn claim. This argument is based on UCC's assertion that, as a bulk supplier, *44 UCC satisfied any duty to warn through the warnings it provided to Georgia-Pacific, its customer.
"In negligence actions, a motion for directed verdict should be treated with special caution because it is the function of the jury to weigh and evaluate the evidence." Woodard v. Armenian Cultural Ass'n of Am., Inc., 724 So.2d 669, 671 (Fla. 4th DCA 1999) (quoting Pascale v. Fed. Express Corp., 656 So.2d 1351, 1353 (Fla. 4th DCA 1995)). A motion for directed verdict should be granted only when the evidence shows that the jury could not reasonably differ as to the existence of a material fact. See LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc., 842 So.2d 881 (Fla. 4th DCA 2003). In considering a motion for directed verdict, the court must evaluate the evidence in the light most favorable to the nonmoving party and every inference must be drawn in favor of that party at the trial level, and on appeal. See id. If different reasonable inferences may be drawn or there is conflicting evidence, the case should be submitted to the jury. See Goss v. Permenter, 827 So.2d 285, 288 (Fla. 5th DCA 2002).
UCC contends that it satisfied its duty to warn by informing Georgia-Pacific of the hazards of asbestos. It asserts that, as a bulk supplier, it had no affirmative duty to warn ultimate users of the dangers of asbestos. We disagree.
UCC, as a bulk supplier of asbestos, had a duty to warn of the danger of its product. Section 388 of the Restatement (Second) of Torts provides that:
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
Restatement (Second) of Torts § 388 (1965); see also Sowell v. Am. Cyanamid Co., 888 F.2d 802, 803-04 (11th Cir.1989).
Under the Restatement, UCC is liable if it knowingly placed a dangerous product on the market, the dangerous condition of which is unnoticeable, and failed to properly warn of the dangerous condition.
UCC contends its duty was discharged by virtue of the warnings it provided to Georgia-Pacific, the manufacturer. It is true that the duty to warn can be discharged if the supplier passes the necessary information and warnings to manufacturers of the product's dangerous condition. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1485 (11th Cir.1994). However, in order for a supplier to adequately discharge its duty to warn, a manufacturer must be considered a learned intermediary.
A learned intermediary is defined as "one who has knowledge of the danger and whose position vis-a-vis the manufacturer and consumer, confers a duty to convey the requisite warnings to the consumer." Brito v. County of Palm Beach, 753 So.2d 109, 111 n. 1 (Fla. 4th DCA 1998) (citing Hayes v. Spartan Chem. Corp., 622 So.2d 1352, 1354 (Fla. 2d DCA 1993)). Yet, in certain instances, warnings *45 from a supplier to a manufacturer, alone, are insufficient:
If, however, the third person is known to be careless or inconsiderate or if the purpose for which the chattel is to be used is to his advantage and knowledge of the true character of the chattel is likely to prevent its being used and so to deprive him of this advantageas when goods so defective as to be unsalable are sold by a wholesaler to a retailerthe supplier of the chattel has reason to expect, or at least suspect, that the information will fail to reach those who are to use the chattel and whose safety depends upon their knowledge of its true character. In such a case, the supplier may well be required to go further than to tell such a third person of the dangerous character of the article, or, if he fails to do so, to take the risk of being subjected to liability if the information is not brought home to those whom the supplier should expect to use the chattel.
...
Even though the supplier has no practicable opportunity to give this information directly and in person to those who are to use the chattel or share in its use, it is not unreasonable to require him to make good any harm which is caused by his using so unreliable a method of giving the information which is obviously necessary to make the chattel safe for those who use it and those in the vicinity of its use.
Restatement (Second) of Torts § 388 cmt. n (1965).
Factors to be taken into consideration when determining whether a supplier has discharged its duty to warn the ultimate user of its product include: 1) the dangerous nature of the product; 2) the form in which the product is used; 3) the intensity and form of the warnings given; 4) the burdens to be imposed by requiring warnings; and 5) the likelihood that the warnings will be adequately communicated to the foreseeable users of the product. See Sowell, 888 F.2d at 804 (quoting Dougherty v. Hooker Chem. Corp., 540 F.2d 174, 179 (3d Cir.1976)).
In this case, it was for the jury to determine the adequacy of UCC's warnings to Georgia-Pacific and whether, based on the sufficiency of the warnings given, UCC still owed Kavanaugh a duty. See Hayes, 622 So.2d at 1354. The evidence presented clearly showed that although UCC provided information and some warning to Georgia-Pacific, it did not fully disclose the magnitude of the hazards then known to exist.
UCC insists that Shell Oil Co. v. Harrison, 425 So.2d 67 (Fla. 1st DCA 1982), controls this case and warranted a directed verdict in its favor. In Shell Oil, the plaintiff was injured by a chemical product, Nemagon, supplied by the defendant through a separate manufacturer, Kerr-McGee. Once the defendant shipped Nemagon to Kerr-McGee, Kerr-McGee would reformulate and market it for various uses. Id. at 68. Once it became aware that Nemagon could be harmful, the defendant notified Kerr-McGee to inform its employees and customers of the potential harm, and to return any stock on hand to the defendant. Id.
The first district found that because the defendant had warned Kerr-McGee of the harm of Nemagon, it could not be liable to the ultimate consumer, and was thereby entitled to a directed verdict. Id. at 70. In reaching its conclusion, the first district found Zunck v. Gulf Oil Corp., 224 So.2d 386 (Fla. 1st DCA 1969), to be dispositive. There, Gulf Oil marketed an odorless gas to a wholesale distributor who additionally purchased odorant from Gulf Oil to mechanically insert into the gas as an effort *46 to warn customers. See Shell Oil, 425 So.2d at 69. The wholesale distributor proceeded to supply the product to a retail distributor who sold it to the ultimate user. Id. The court in Zunck found that the manufacturer and distributor had fulfilled their duty to warn and "absent a showing that they had not taken necessary precautions commensurate with the dangers reasonably anticipated under the circumstances, they were not responsible for warning the ultimate users of the gas." Shell Oil, 425 So.2d at 69.
Unlike Shell Oil and Zunck, UCC did not fulfill its duty to warn. It provided Georgia-Pacific with limited information which was not communicated to the ultimate users. Because UCC did not take reasonable precautions under the circumstances, its duty to warn did not stop with Georgia-Pacific, but continued to the ultimate user.
When faced with a motion for directed verdict, the trial court had to evaluate the evidence in Kavanaugh's favor. As such, the trial court properly denied the directed verdict motion and we affirm that ruling.
We are unpersuaded by the other arguments raised on appeal and affirm the trial court's order.
AFFIRMED.
MAY, J., and BERNSTEIN, SCOTT M., Associate Judge, concur.