620 So.2d 786 (1993)
ROYAL OAK LANDING HOME-OWNER'S ASSOCIATION, INC., Appellant,
v.
Robert C. PELLETIER and Linda M. Pelletier, His Wife, Appellees.
No. 91-2897.
District Court of Appeal of Florida, Fourth District.
May 12, 1993.
Rehearing and Rehearing Denied July 19, 1993.
*787 Harvey R. Schneider of Schneider, Pearlstine & Heffner, Boca Raton, for appellant.
Kevin M. LaMontagne, Boynton Beach, for appellees.
Rehearing and Rehearing En Banc Denied July 19, 1993.
PER CURIAM.
Royal Oak Landing Homeowner's Association, the appellant, appeals from the trial court's final judgment entered after a non-jury trial. For the reasons stated in this opinion, the judgment of the trial court is reversed and remanded with directions to enter a judgment for the appellant.
The appellees, husband and wife, are the owners of Lots 39 and 40 in a platted subdivision known as Royal Oak Landing, located in Palm Beach County. The subdivision is subject to a Declaration of Protective Covenants and Restrictions. The appellant is the governing homeowner's association.
Section 13.5 of the Declaration contains a requirement that each lot share equally in annual and special assessments. This dispute began when appellees sold a two foot strip (approximately 2%) of Lot 40, to the owners of Lot 41, and then stopped paying the assessment on Lot 40. Consequently, the association filed claims of lien on Lot 39 and Lot 40.
The appellees maintained at trial that they did not owe an assessment for Lot 40 because of sections 11.2 and 13.9 of the Declaration. Section 11.2 provides:
No Lot shall be divided, subdivided or reduced in size unless each divided or subdivided portion thereof is consolidated with one or more contiguous lots.
Section 13.9 of the Declaration provides:
In the event any Lot has been further divided or subdivided and all or part thereof consolidated with a contiguous Lot, the resulting parcel shall, pursuant to the provisions of 13.5 hereinabove, be considered as one lot for the purpose of determining assessment liability.
Accordingly, the appellees claimed that since Lots 39 and 40 were "contiguous" lots, the result of the sale of the two foot strip of Lot 40 was that the remaining ninety-eight percent of Lot 40 automatically became "consolidated" with Lot 39, and Lot 39 became one "resulting parcel" for assessment purposes.
The appellant maintained that the appellees are still responsible for assessments on the two lots. According to the appellant, the Declaration provides that each lot shown on the plat is responsible for one assessment. For this interpretation, the appellants relied on section 1.5 of the Declaration which defines lot as "a Lot located on the Land indicated on the Plat," and section 13.5 of the Declaration which requires that each "[l]ot shall share equally in all Annual Assessments ... [and] Special Assessments." Further, the appellant argues that sections 13.2 and 13.9 of the Declaration provide that the owners of each lot are responsible for the assessment, and the obligation to pay is set once a deed to the lot is accepted.
*788 The trial court found that Lot 39 was a "resulting parcel" within the meaning of section 13.9 of the Declaration. Thus, the court concluded that the appellees were liable for only one assessment, and entered a final judgment accordingly. This appeal followed.
As the matter is now before this court, we recognize the general standard of review in declaratory judgment actions as set forth in Williams v. General Insurance Co., 468 So.2d 1033, 1034 (Fla. 3d DCA), rev. denied, 476 So.2d 673 (Fla. 1985), where the court stated that "the trial court's decision in a declaratory judgment action is accorded a presumption of correctness... ." However, in this case we must review the trial court's interpretation of the Declaration. The interpretation of a contract or a covenant is a matter of law, and, therefore, reviewable by this court. See Florida Power Corp. v. Lynn, 594 So.2d 789, 791 (Fla. 2d DCA) (stating that since the interpretation of a contract "amounts to resolution of a question of law, we, as an appellate court, are not bound to give the trial judge's interpretation any weighted presumption of correctness.") (emphasis added), rev. denied, 602 So.2d 942 (Fla. 1992). See also Coleman v. Florida Ins. Guar. Ass'n, 517 So.2d 686 (Fla. 1988) (the question of the extent of coverage under an insurance policy is a question of law and is therefore subject to plenary review); Leseke v. Nutaro, 567 So.2d 949 (Fla. 4th DCA 1990) (the interpretation or construction of a contract is a matter of law, not one of fact, and an appellate court is not restricted in its ability to interpret a written agreement).
We find that the trial court misconstrued the Declaration. Generally, the intentions of the parties to a contract govern its construction and interpretation. When determining intent, the best evidence is the plain language of the contract. Schweitzer v. Seaman, 383 So.2d 1175 (Fla. 4th DCA 1980). The language being construed should be read in common with other provisions of the contract. Triple E. Dev. Co. v. Floridagold Corp., 51 So.2d 435 (Fla. 1951).
Using these legal principles and considering the entire text of the Declaration, including the purpose and intent for which section 13.5 was enacted, we find ambiguities in the language of the Declaration. When construing ambiguous language, courts will approve that construction which comports with logic and reason. Wright & Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982). "[T]he court should arrive at an interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties." Id. at 629 (citing Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788, 791 (Fla. 2d DCA 1978)).
The purpose of section 13.5 of the Declaration was clearly to require that each lot on the plat share equally in the assessments. It would be illogical to interpret sections 11.2 and 13.9 to allow the appellees, by way of this sale, to avoid paying the legally imposed assessment. Further, it would be an unreasonable and unintended burden on the other lot owners to compensate for the resulting assessment deficiency. We find that this result was not within the original intent or purpose of the parties or the Declaration.
We find that the intent of the Declaration was for each of the 109 Lots to pay an equal assessment. This assessment was set when each deed was accepted. We hold, therefore, that under the facts of this case, the appellees, as the original owners of Lots 39 and 40, are responsible for the assessment on both lots.
Accordingly, we reverse the final judgment entered in favor of appellees and remand with directions to enter a judgment in favor of appellant, to reinstate the claims of lien filed by appellant, and to grant appellant's motion for attorneys' fees pursuant to section 14.3 of the Declaration. We affirm all other issues raised on appeal.
GUNTHER and STONE, JJ., and MOE, LEROY H., Associate Judge, concur.