755 So.2d 710 (1999)
Lorraine Abruzzo GUMBERG, Appellant/Cross-Appellee,
v.
Andrew Donald GUMBERG, Appellee/Cross-Appellant.
No. 98-0869.
District Court of Appeal of Florida, Fourth District.
August 11, 1999.
*711 Arthur C. Koski and Thomas A. Stewart of Arthur C. Koski, P.A., Boca Raton, for appellant/cross-appellee.
Sidney M. Pertnoy of Pertnoy, Solowsky & Allen, P.A., Miami, for appellee/cross-appellant.
WARNER, C.J.
In its final judgment of dissolution, the trial court determined that the husband would be the primary residential parent of the child, but then ordered him to provide a $500,000 home for the wife, based on its interpretation of the prenuptial agreement which required the award if the wife were to obtain residential custody of the child. The court also ordered the wife to live within eight miles of the husband. We find no error in the award of primary residential custody. However, we reverse the portions of the order obligating the husband to provide the wife a home and requiring the wife to relocate her residence.
Prior to the parties' marriage in 1993 the parties entered into a prenuptial agreement. Soon after the marriage, a son was born. In 1997, the wife left the marital home and filed for divorce a few months later. During the divorce proceedings, both parties sought custody of their child. A child custody evaluator and a guardian ad litem were both appointed, each of whom recommended that the husband be given custody of the child. After a full trial at which several psychologists testified, as well as the custody evaluator and the guardian ad litem, the court in a lengthy ruling ordered shared parental responsibility *712 with the husband being the residential parent.
On appeal, the only significant challenge the wife makes to the custody determination is a claim that the custody evaluator should have been disqualified because of bias. This issue was first raised after the court's adverse ruling on custody, even though the wife knew of the grounds for the motion long before trial. Her attorney even told the court that the wife had no objection to the custody evaluator's continued involvement in the case. While motions for disqualification of witnesses are not necessarily governed by the disqualification timeliness standard as are motions to recuse a judge, see Florida Rule of Judicial Administration 2.160(e), we think that the motion must still be made within a reasonable time of discovering the reason for the conflict. Cf. Foley v. Fleet, 644 So.2d 551, 552 (Fla. 4th DCA 1994). Moreover, her attorney waived any right to challenge the evaluator when, with knowledge of the alleged bias, he did not seek disqualification. The record reflects that the evaluator's report was drafted and given to counsel prior to trial and after counsel had knowledge of the incident from which the claim of bias arose. Finally, section 59.041, Florida Statutes (1997), provides that a judgment will not be reversed unless it appears the alleged error resulted in a miscarriage of justice. There was considerable additional testimony all of which supported the trial court's ruling, including the testimony of the guardian ad litem, lay witnesses, and psychologists hired by the parties.
Although the court determined that the husband would be the residential parent, the trial court nevertheless required the husband to provide the wife with a residence valued at $500,000 based upon the trial court's interpretation of the prenuptial agreement between the parties. The husband challenges this ruling on cross-appeal. The agreement stated:
in the event the parties are legally separated and children have been born of this marriage..., then in that event GUMBERG will provide, either by purchase or rental at his sole discretion, a residence having a value of $500,000 for ABRUZZO and said children (provided residential custody by ABRUZZO of any children is in the best interest of the children and is so determined by a court of competent jurisdiction).
In its ruling, the court explained that the issue was a legal one and that "[r]esidential custody means exactly that. Jordan will be spending two nights, three days at mom's house and the provisions of [the agreement] do apply."
Interpretation of a contract or covenant is a matter of law and is therefore reviewed de novo. See Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier, 620 So.2d 786, 787 (Fla. 4th DCA), rev. denied, 630 So.2d 1101 (Fla.1993). In Critchlow v. Williamson, 450 So.2d 1153, 1156 (Fla. 4th DCA 1984), we stated:
[i]n interpreting prenuptial agreements, the courts are guided by the same principles which control the construction of other contracts. Hall v. Hall, 135 So.2d 432 (Fla. 3d DCA 1961). Where a contract is clear and unambiguous, it is the best evidence of the intent of the parties and its meaning and legal effect are questions of law for determination by the court alone. Innkeepers Inter., Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1976 [1975]). However, if a provision is ambiguous, the matter must be submitted to the finder of fact. See Hoffman v. Terry, 397 So.2d 1184 (Fla. 3d DCA 1981).
In Laufer v. Norma Fashions, Inc., 418 So.2d 437 (Fla. 3d DCA 1982), the court explained that a phrase in a contract is "ambiguous" when it is uncertain of meaning and disputed and must be determined as an issue of fact.
We find that the phrase "residential custody" is not ambiguous when considered in light of the body of law applicable to family law matters. Although our law *713 has concentrated on "shared parental responsibility," emphasizing the concept that both parents are responsible for the welfare of the child, and some of our statutes speak in terms of determining "primary residence," the statutes still differentiate between custodial and noncustodial parents. Section 61.046(1), Florida Statutes (1997), defines the "custodial parent" as "the parent with whom the child maintains his or her primary residence." A "noncustodial parent" means "the parent with whom the child does not maintain his or her primary residence." § 61.046(7). Custodial parents have residential custody, and noncustodial parents have visitation with the child. See, e.g., § 61.13(2)(a)("[t]he court shall have jurisdiction to determine custody"); § 61.13(4)(b)("[w]hen a custodial parent refuses to honor a noncustodial parent's visitation rights")(emphases added). In fact, the statutes equate custody with the primary residence of the child. See §§ 61.046(1), (7); see also § 61.13(2)(b)1. ("[t]he court shall determine all matters relating to custody of each minor child of the parties in accordance with the best interests of the child.... After considering all relevant facts, the father of the child shall be given the same consideration as the mother in determining the primary residence of a child")(emphases added); § 61.13(8)("[i]f the court orders that parental responsibility, including visitation, be shared by both parents, the court may not deny the noncustodial parent overnight contact and access to or visitation with the child solely because of the age or sex of the child"). (Emphasis added). Moreover, the case law uses the term "primary residential custody" almost exclusively, but when "residential custody" is mentioned it is clearly referring to "primary residential custody". See, e.g., Finney v. Giddens, 707 So.2d 856 (Fla. 2d DCA 1998); Blosser v. Blosser, 707 So.2d 778 (Fla. 2d DCA 1998); Pineiro v. Pineiro, 683 So.2d 148 (Fla. 3d DCA 1996). In short, we cannot find any case which refers to a parent who has visitation rights as a "custodial parent." Therefore, upon de novo review of the interpretation of this contractual provision, we hold that the term "residential custody" means "primary residential custody" which was awarded to the husband in this case. Thus, the wife was not entitled to the benefits of this paragraph of the prenuptial agreement.
Even if we were to consider the phrase to be ambiguous, the evidence does not support a holding that the wife, who was not determined to be the "custodial parent," had "residential custody" of the child within the meaning of the contract. At trial, the wife's former attorney who advised her when she signed the prenuptial agreement, testified that he understood "residential custody" to mean "primary residential custody" as that term is always used in domestic litigation, although he did not recollect any specific conversation with the wife about the term. The wife testified that she did not remember any discussions about housing arrangements for her and the child should a divorce occur. There was no evidence which would support the construction accepted by the trial court. Nor did anyone even argue such. The wife's attorney never mentioned the paragraph regarding the husband's obligation to provide a house for the wife during closing argument. That is not surprising, given the fact that at an earlier hearing the wife's attorney told the judge that the prenuptial agreement provides "a home of $500,000 if she is the primary physical residency [sic] parent." We thus reverse the trial court's ruling. Our reversal renders moot the wife's second issue regarding expenses for maintenance of the home.
The wife also complains of the trial court's restriction that she live within an eight mile radius of the husband. Because we have reversed the requirement that the husband provide a home for the wife, we also remand for the trial court to re-examine this issue in light of our reversal. As the wife will now be responsible for her own housing, such a restriction may not be *714 financially feasible. Moreover, under these circumstances, where the wife is not the custodial parent and the father has no duty to provide her housing, such a restriction on the wife's movement may be arbitrary and unreasonable.
We affirm as to all other issues raised. We remand for reconsideration of the living restriction on the wife and for further proceedings on the issues reserved in the final judgment.
STEVENSON, J., and CONNER, BURTON C., Associate Judge, concur.