766 So.2d 294 (2000)
GILMAN YACHT SALES, INC., Appellant,
v.
FMB INVESTMENTS, INC.; LBB/Oceantide, Inc.; and Oviatt Marine, Inc. Appellees.
No. 4D98-3635.
District Court of Appeal of Florida, Fourth District.
February 23, 2000.
Opinion Corrected on Grant of Rehearing March 31, 2000.
*295 Robert L. Jennings and James B. Innes of Jennings & Valancy, P.A., Fort Lauderdale, for appellant.
Gregory G. Olsen and Paul M. Volmert of Morgan, Olsen & Olsen, Fort Lauderdale, for appellees FMB Investments, and LBB/Oceantide.
Ralph L. McGrath, Jr. of Vernis & Bowling of Fort Lauderdale, P.A., Fort Lauderdale, for appellee Oviatt Marine, Inc.
FARMER, J.
FMB Investments (seller) and Roger Triplett (buyer) entered into a contract for the sale of a yacht. Oviatt Marine Group, which held the listing, and Gilman Yacht Sales, which procured the buyer, participated as brokers in arranging the sale. Buyer failed to close within the time set by contract. As a result, seller and the two brokers took the deposit as liquidated damages under paragraph 7 of the contract which provides:
"In the event that closing is not consummated due to non-performance of Buyer... all deposit funds paid prior to closing shall be retained by the Seller and Broker as liquidated and agreed damages, and the parties shall be relieved of all obligations under this Agreement. Buyer and Seller agree that the forfeited deposit shall be [divided] equally between the Seller and Broker(s) after all expenses incurred on behalf of Buyer against the Vessel have been paid from the deposit." [e.s.]
Two months later, buyer contacted Oviatt (listing broker) to express his continuing interest in purchasing the vessel. As a consequence of discussions that ensued, buyer purchased the yacht from seller under an oral agreement, with title conveyed by a new corporation formed by seller for this sale.[1] Listing broker received a full 10% commission of $120,000 from this sale under the oral agreement, the entire commission payable under the listing agreement.
After learning of the sale, Gilman (selling broker) filed suit for a commission against seller and listing broker, as well as the new corporate entity that had formally conveyed title. In time, selling broker moved for a partial summary judgment. The motion was based on paragraph 14 of the original contract which provides:
"This Contract shall be binding on all parties herein, their heirs, personal representatives and/or assigns, when this Contract shall have been signed by all parties or their duly authorized agents. Seller agrees not to sell the vessel or enter in to any contract for the sale while this contract is in effect. If the sale is not consummated per the terms of this Agreement, and the Buyer and Seller make direct arrangements between themselves within two (2) years *296 after this agreement is terminated for transfer of ownership of the vessel, the Seller agrees to pay Broker(s) an amount identical to the commission the Broker(s) would receive under the terms of this Agreement." [e.s.]
The trial court denied this motion, reasoning that the provisions of paragraph 14 dealing with a brokers commission for a later sale had been, as it were, trumped by the provisions of paragraph 7 dealing with buyers breach.
Selling broker then filed an amended complaint, again asserting a right to the commission under paragraph 14. The adverse parties in turn filed their own motion for summary judgment, arguing again that paragraph 7 prevailed over paragraph 14. The trial court granted their motion and ultimately entered a final judgment in their favor. Again, the court concluded that, as a matter of law, paragraph 7 extinguished any obligations of the seller and the listing broker to the selling broker under paragraph 14 of the original contract. On appeal, selling broker maintains that the trial court's construction of the written contract is erroneous. We agree.
The interpretation of a written contract is a question of law to be decided by the court. DEC Electric, Inc. v. Raphael Construction Corp., 558 So.2d 427, 428 (Fla.1990); Royal Oak Landing Homeowner's Assoc. v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993). An appellate court is not bound to give the trial judge's interpretation or construction of a contract any weighted presumption of correctness. Royal Oak Landing, 620 So.2d at 788; see also Florida Power Corp. v. Lynn, 594 So.2d 789, 791 (Fla. 2d DCA). To the contrary, a decision construing a contract is reviewable on appeal under a de novo standard of review, and therefore we are required to consider for ourselves anew the meaning of the disputed contractual language. See Gumberg v. Gumberg, 755 So.2d 710 (Fla. 4th DCA 1999); Sugar Cane Growers Coop. of Fla., Inc. v. Pinnock, 735 So.2d 530, 534-535 (Fla. 4th DCA 1999); Broward County v. LaPointe, 685 So.2d 889, 892 (Fla. 4th DCA 1996).
In construing the contract at issue, we follow the well established principle that, where one or more provisions of a contract appear to be in conflict, those provisions should be harmonized and reconciled if it is possible to do so. See Dodge City, Inc. v. Byrne, 693 So.2d 1033, 1035 (Fla. 2d DCA 1997); and § 203, RESTATEMENT (SECOND) OF CONTRACTS (1981) (interpretation giving a reasonable and effective meaning to all the terms in contract is preferred to that which renders part of contract without effect); 11 FLA. JUR.2D, Contracts § 121, at 421 ("all of the provisions of a contract should be given their due meaning, and should be so construed as to render them consistent and harmonious if possible; effect should be given to each provision if that can reasonably be done."). We conclude that paragraph 7 and paragraph 14 can be read in harmony with each other and both can be given effect.
Paragraph 7 provides only for liquidated damages in the event of buyer's non-performance or breach; it has no application as regards the seller's obligation to any brokers for a commission if the vessel is sold within 2 years after such breach. Buyer's breach should be understoodfor paragraph 7 itself plainly so indicatesas discharging only the seller's and buyer's obligations to each other.[2] Thus, if seller takes its share of the deposit after a breach by buyer, seller can no longer sue buyer for damages or specific performance. The liquidated damages provided in paragraph 7 replace all of seller's remedies for buyer's breach.
On the other hand, paragraph 14 is intended to protect the efforts of the brokers *297 in bringing the parties together for the sale. Paragraph 14 thus explicitly contemplates that its provisions outlast a breach by buyer and any resulting enforcement of paragraph 7. Thus paragraph 14 memorializes the seller's continuing obligation to pay a commission on any later sale between buyer and sellerfor a period of 2 years after buyer's non-performanceto the brokers who earned such compensation resulting from the original contract of sale.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS COURT'S CONSTRUCTION OF THE CONTRACT.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] Seller claimed that the new corporate entity was necessary for "sales tax purposes."
[2] Buyer and seller are irrefutably "the" parties to which reference is made in the last clause of the first sentence of paragraph 7.