883 So.2d 364 (2004)
Bruce McPHEE, Appellant,
v.
THE PAUL REVERE LIFE INSURANCE COMPANY, Appellee.
No. 4D02-3748.
District Court of Appeal of Florida, Fourth District.
September 29, 2004.
*365 Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Pompano Beach, and Robert J. McFann and Timothy P. Beavers of McFann & Beavers, P.A., Fort Lauderdale, for appellant.
John E. Meagher and Jeffrey M. Landau of Shutts & Bowen LLP, Miami, for appellee.
STEVENSON, J.
Bruce McPhee appeals from a final judgment entered pursuant to a jury verdict in favor of the Paul Revere Life Insurance Company (and related or successor companies, hereinafter collectively referred to as "Paul Revere") in a suit over benefits under a disability insurance policy. We reverse because, under the facts of this case, the trial court erred in failing to determine, as a matter of law, that McPhee was "regularly engaged" in an occupation at the time of his alleged disability.

The facts
After a five-day trial, a jury determined that McPhee was not totally disabled under the terms of his disability insurance policies with Paul Revere. The essential facts are summarized as follows. In April 1993, McPhee became chief executive officer of hurricane shutter manufacturer Wrono Enterprises under a contract that guaranteed his continued employment in that position until 1999. The contract also provided for Wrono's paying the cost of a disability insurance policy. The subject insurance policy was issued by Paul Revere on October 15, 1993, and an additional policy increasing his monthly benefit on account of the high level of his income was issued in 1994.
McPhee continued to perform his CEO duties over the next several years albeit he had some neck and shoulder injuries from a prior automobile accident, which occurred in 1993. In 1996, Dr. Dan Cohen, his surgeon, expressed the view that appellant could no longer perform gainful employment due to the aforementioned injuries. McPhee was away from his job for more than three months after surgery in 1996, and ten days after returning to work in December of that year, he was terminated. The company asserted several grounds for this action, including that McPhee was unable to work because of health problems.
McPhee maintained that he was not physically disabled at the time of his firing and later won a suit against Wrono for wrongful termination. Believing that he could still work and would find a cure for his condition, McPhee kept looking for related employment and consulted a variety of physicians in different parts of the country. McPhee was treated by Dr. Barth Green in Miami, brachial plexus specialist Dr. Charles Aprill in Louisiana, Dr. David Kline, and Johns Hopkins neurologist Dr. Donlin Long.
One of McPhee's physicians was pain management expert Dr. Patrick Reynolds of Mt. Sinai Hospital. Reynolds said that McPhee desired to return to work, but the necessary medical ability to do so was lacking. Psychiatrist Dr. Scott Segal, who had been treating him since August 1996, testified that McPhee was upset when he was terminated because he was a proud man who wanted to work but clearly was unable to do so. It was Dr. Segal's opinion that McPhee was unemployable but had stubbornly attempted to continue working when he really could not.
*366 After a dorsal spinal stimulator, implanted on July 10, 1998, by Dr. Mario Nanes, failed to bring any relief, McPhee accepted the fact that he could not work. In August 1998, McPhee filed a disability claim with Paul Revere, listing July 14, 1998  the date the dorsal spine stimulator was removed  as the date his disability began. At first, Paul Revere made disability payments to McPhee but then later stopped because it determined that McPhee did not qualify for the benefits.[1] This litigation followed on July 2, 1999 when McPhee sued Paul Revere for continuation of the benefits. After the issue of coverage was resolved pre-trial, the case ultimately proceeded to trial with the primary question of whether McPhee was totally disabled.

The policy definitions
According to McPhee's policies, total disability means the "inability to perform the important duties of the insured's occupation," and the insured's "occupation" is defined as the occupation in which the insured is "regularly engaged at the time disability begins." Although McPhee last worked for Wrono in December 1996, he listed July 14, 1998, as the date on which his disability began. During the interim between his last day with Wrono and the asserted disability date, McPhee was undergoing medical treatment and was still insisting that he could work. At trial, Paul Revere reasoned that because McPhee had not worked for twenty months before making his claim, there was a jury question as to what was his occupation. McPhee's position was that there was no actual jury question because it was undisputed that he had not worked at all for eighteen months before filing his claim for benefits.
McPhee requested the trial judge to instruct the jury as a matter of law that his occupation according to the policy definitions, i.e., the occupation in which he was "regularly engaged" at the time his disability began, was that of executive officer of a construction company  the most recent job he had. McPhee argued there was ambiguity in the contract in that nothing in the policy said directly that the insured had to be actively employed at the time he applied for disability benefits; hence, the court should construe the policy liberally in favor of benefits to the insured. In the alternative, McPhee requested the trial judge to instruct the jury that he did not have to be actively employed at the time he applied for disability benefits. The court refused to so instruct the jury, saying that the nature of McPhee's occupation should be decided by the jury.
Over McPhee's objections, without further elaboration on its meaning, the court merely read the jury language from the policy itself:
For the purpose of this lawsuit, there are multiple elements to the definition of Total Disability, as quoted below. McPhee must prove by the greater weight of the evidence that he meets all of these elements to be entitled to Total Disability Benefits.
McPhee's policies contain the following language:
"Your Occupation" means the occupation or occupations in which You are regularly engaged at the time Disability begins.

"Total Disability" means that because of Injury or Sickness:
a. You are unable to perform the important duties of your occupation; and
b. You are receiving Physician's care.... (underlined emphasis added).
*367 During closing argument, Paul Revere cleverly, but strongly nevertheless, suggested that since McPhee was not employed at the time his alleged disability began, McPhee had no determinable occupation for purposes of the disability policies and, therefore, could not prove entitlement to benefits under the policies. The jury determined that, under the terms of his policies, McPhee was not totally disabled.

Discussion
The interpretation of a contract is a question of law to be decided by the court. See Gilman Yacht Sales, Inc. v. FMB Invs., Inc., 766 So.2d 294, 296 (Fla. 4th DCA 2000), and cases cited therein. The standard of review when the issue is one of contract interpretation is de novo. See id. Under the circumstances of this case, we find that the trial court erred in failing to instruct the jury that McPhee was regularly engaged in an occupation at the time his disability began despite the fact that McPhee was not actively employed on that date.
The facts in Burriesci v. Paul Revere Life Insurance Co., 255 A.D.2d 993, 679 N.Y.S.2d 778 (1998), are somewhat analogous. There, Burriesci had left her job as assistant administrator of a small company and was receiving unemployment insurance when she failed to find a similar job. During this period of unemployment, she injured her back and her physician determined that she was totally disabled as of August 1991.
Like the present policies, Burriesci's individual disability policy from Paul Revere provided benefits for total disability if the insured was unable to perform the important duties of her occupation and was under the regular care of her physician. The definition of the term "occupation"  the occupation "in which You are regularly engaged at the time You become Disabled"  was identical to the definition in the present policies. Id. at 778.
Paul Revere denied Burriesci's initial claim on the ground that she was unemployed. Nevertheless, after she reinjured her back in December 1991, the company paid her three months' disability payments, only then to deny further benefits on the ground that she had failed to prove continuing disability. Thereupon, Burriesci sued for damages, breach of contract, breach of the covenant of good faith, infliction of emotional distress and misrepresentation. Paul Revere then moved for summary judgment dismissing the complaint, reasoning that, under the plain language of the policy, she was entitled to no benefits because she was unemployed at the time she became disabled.
The supreme court  New York's equivalent of our circuit court  granted the motion for summary judgment, but the appellate division  New York's equivalent of our district court  found that the lower court had erred insofar as the first two counts of the complaint were concerned. The plaintiff had abandoned her challenge to the dismissal of the third and fourth causes of action, so the ruling on those was allowed to stand.
The appellate court held that the policy was ambiguous:
By failing to use language that provides that an insured must be actively working at the time that the disability arises, the policy does not unambiguously exclude coverage for unemployed insureds. "The construction and effect of a contract of insurance is a question of law to be determined by the court where there is no occasion to resort to extrinsic proof." We reject defendant's contention that the addition of the term "regularly" to the term "engaged" means only that the policy covers a person who is *368 employed but is not at work when the injury occurs.
Id. at 779 (citations omitted). The court then stated that the occupation in which the plaintiff was "regularly engaged" was that of assistant administrator, and that she could not be denied benefits because of her temporary unemployment. See id.
We acknowledge there is some difference in the circumstances of Burriesci and the instant case. Here, McPhee was out of work for much longer and was in no position to seek employment again, albeit he had tried to find similar employment before he became convinced that his doctors were right and he could no longer work. Yet, as in Burriesci, the policy language at issue is ambiguous when applied to the insured's circumstances. Significantly, Paul Revere's arguments at trial suggested to the jury that the policy could be read as not covering McPhee's disability at all because he had no "occupation" within the meaning of the policy since he was not actively employed when his disability was alleged to have begun. In the instant case, such an interpretation would effectively eliminate any coverage and is clearly contrary to any reasonable construction of this disability insurance contract. Here, there was no reason to require the jury to determine if McPhee was regularly engaged in an occupation at the time his disability began.[2] The reasoning of the appellate division in Burriesci is equally applicable here. The meaning of the policy language was one for the court, but effectively was turned over to the jury.
Additionally, the jury instructions which included the policy definitions of "occupation," without further comment from the trial court as indicated previously, were misleading and therefore inappropriate. As appellant points out, the test for reversible error arising from an erroneous jury instruction is not whether the instruction misled, but only whether it reasonably might have misled the jury. See Gross v. Lyons, 721 So.2d 304, 306 (Fla. 4th DCA 1998), approved, 763 So.2d 276 (Fla.2000). The instruction given, in combination with the arguments presented by Paul Revere, could have easily led the jury to conclude that because McPhee was not employed at the time he filed his claim, he had no occupation and therefore could not be totally disabled within the terms of the policies.
In conclusion, we hold that the trial judge erred in failing to find, as a matter of law, that McPhee was regularly engaged in an occupation at the time his disability began. Of course, the trial court was correct in leaving the jury the task of deciding, as a factual matter, the true nature and scope of McPhee's "occupation." See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830-31 (Fla.1997); see also Hopkins v. N. Am. Co. for Life & Health Ins., 594 S.W.2d 310 (Mo.Ct.App.1980). In sum, the language of the insurance contract should have been interpreted in a reasonable manner, consistent with the objectives and intentions of the contracting parties, i.e., to provide disability benefits in the event McPhee established that he had become physically disabled during the term of the policy.
REVERSED and REMANDED.
WARNER and GROSS, JJ., concur.
NOTES
[1] McPhee continued to pay the premiums for the policy after being terminated by the company and paid them until he started receiving disability benefits under the policy.
[2] This is particularly so in light of the fact that McPhee's employment contract with Wrono Enterprises extended through 1999, and McPhee's disability allegedly began on July 14, 1998.