POLSTON, J.,
dissenting.
I agree with the Third District Court of Appeal that Union Carbide is entitled to a new trial since the jury instruction on Au-bin’s failure to warn claims — namely, “[a]n asbestos manufacturer, such as Union Carbide Corporation, has a duty to warn end users of an unreasonable danger in the contemplated use of its products” — was misleading. As the Third District explained, this instruction failed to inform the jury about the learned intermediary defense, which permits Union Carbide to “discharge[] its duty [to warn] by adequately warning the intermediary manufacturers [to whom Union Carbide sold its asbestos] and reasonably relying on them to warn end-users” about the dangers of the asbestos the intermediaries incorporated into the products they manufactured and sold to end users like Aubin. Union Carbide Corp. v. Aubin, 97 So.3d 886, 902 (Fla. 3d DCA 2012). In so doing, the trial court improperly permitted the jury to find Union Carbide liable simply because Union Carbide did not directly warn Aubin about the dangers of asbestos. Therefore, I respectfully dissent.
The trial court refused to instruct the jury on the learned intermediary defense based on the Fourth District Court of Appeal’s holding in McConnell v. Union Carbide Corp., 937 So.2d 148, 156 (Fla. 4th DCA 2006), that this defense “is not applicable to Calidria Asbestos and Ready-Mix with its hidden measure of asbestos,” *521 meaning “a supplier in the shoes of [Union] Carbide may not reasonably rely on an intermediary, no matter how learned it might be deemed.” However, as the majority explains, McConnell does not accurately state Florida law, which accepts the learned intermediary defense as a viable defense to the negligent and strict liability failure to warn claims alleged in this case. Further, as the majority holds, it is for the jury to decide whether it is reasonable under the circumstances for a supplier or manufacturer to rely on an intermediary to warn the end user regarding the dangerousness of the product at issue.
Notwithstanding these conclusions, the majority holds that Union Carbide is not entitled to a new trial in which it will have the benefit of a jury instruction on the learned intermediary defense because, in the majority’s view, Union Carbide failed to request an instruction that included “an accurate statement of the law as to this defense.” Majority op. at 518. The record belies the majority’s holding.
During the charge conference, Union Carbide objected to the instruction that it had a duty to directly warn end users, arguing that this instruction, standing alone, was misleading. Union Carbide argued that this instruction is “not a correct statement of the law[, and] basically say[s] game, set, match, if Union Carbide didn’t warn Mr. Aubin, you should find for Mr'. Aubin.” Union Carbide further argued that “there are other factors that the jury should take into consideration” in determining whether it satisfied its duty to warn.
Specifically, Union Carbide proposed jury instructions modeled after both the Second and Third Restatements of Torts and requested that these instructions be given in lieu of, or at least in addition to, the general instruction stating that Union Carbide had a duty to warn end users. One of these proposed instructions stated that, “[i]n considering what constitutes reasonable care in connection with [the] failure to warn claim, [the jury’s] consideration may include, but is not limited to[:] the warnings Union Carbide provided to its customers who used Union Carbide’s asbestos in making joint compound or ceiling sprays,” “whether Union Carbide asbestos customers were aware of the dangers involving asbestos,” “whether Union Carbide had access to joint compound and ceiling spray end customers,” and “whether Union Carbide had the ability to require customers to give specific warnings to users of the products incorporating Union Carbide’s asbestos.”
In holding that Union Carbide’s efforts were insufficient to preserve its right to have the jury instructed on the learned intermediary defense, the majority singles out two of Union Carbide’s proposed factors as inaccurate statements of the law. First, the majority takes issue with the factor of “whether Union Carbide asbestos customers [ (the intermediaries) ] were aware of the dangers involving asbestos,” suggesting that this factor improperly focuses on what the intermediary, rather than the end user, knew about the dangers of the product. However, the intermediary’s knowledge that the product is in fact dangerous is necessary for the intermediary to pass on the proper warnings to end users and, therefore, entirely relevant to the learned intermediary defense. See Union Carbide, 97 So.3d at 899 (explaining that “the intermediary’s education, knowledge, expertise, and relationship with end-users bear heavily on the reasonableness of a manufacturer relying on that intermediary to relay warnings to the end-users”) (emphasis added).
Further, Union Carbide’s proposed instructions do not suggest that the mere fact its intermediaries knew about the dangers of asbestos was sufficient, in and of itself, to discharge Union Carbide’s duty to *522 warn. To the contrary, Union Carbide also proposed that the jury should consider the actual “warnings Union Carbide provided to its customers who used Union Carbide’s asbestos in making joint compound or ceiling sprays.” This factor is directly in line with Florida law that it is “for the jury to determine the adequacy of [Union Carbide’s] warnings to [the intermediary] and whether, based on the sufficiency of the warnings given, [Union Carbide] still owed [the end user] a duty.” Union Carbide Corp. v. Kavanaugh, 879 So.2d 42, 45 (Fla. 4th DCA 2004).
Next, the majority faults Union Carbide for proposing that the jury should factor “whether Union Carbide had access to joint compound and ceiling spray end customers” into its analysis because, in the majority’s view, it improperly requires that Union Carbide “must have direct access to the end user.” Majority op. at 518-19. However, the majority wrongly reads this proposed factor to say something it plainly does not. Nothing about this factor suggests that Union Carbide could somehow avoid its duty to warn simply because it lacks access to the end users. Rather, this factor suggests that it would probably be more reasonable for Union Carbide to rely on intermediaries who know about the dangers of its asbestos to warn end users if the intermediaries had greater access to the end users than Union Carbide, but less reasonable if Union Carbide’s access was basically the same as the intermediaries’ access. Indeed, as the majority acknowledges, Florida law defines a learned intermediary as “one who has knowledge of the danger and whose position vis-a-vis the manufacturer and consumer, confers a duty to convey the requisite warnings to the consumer.” Majority op. at 514 (emphasis added) (quoting Kavanaugh, 879 So.2d at 44).
Moreover, the Third Restatement specifically lists “the feasibility and effectiveness of giving a warning directly to the user” among the factors relevant to the learned intermediary defense. Restatement (Third) of Torts: Prod. Liab. § 2 cmt. i (1998). Though the majority declines to adopt the Third Restatement, this holding is of no moment where the learned intermediary defense is concerned because, as the majority expressly recognizes, “[t]he Second and Third Restatements both recognize that a manufacturer may be able to rely on an intermediary to relay warnings to the end user,” and as the majority opinion indicates, both Restatements rely upon basically the same factors in determining whether a manufacturer can reasonably rely on the intermediary and thereby can discharge its duty to warn an end user. Majority op. at 515; see also Union Carbide, 97 So.3d at 904 (“[B]e-cause the jury instructions did not inform the jury that Union Carbide could have discharged its duty to warn end-users by adequately warning the intermediary manufacturers, and reasonably relying on them to warn end-users, they were misleading under both the Third Restatement and the Second Restatement.”).
While it is unclear from the majority’s opinion what magic words Union Carbide should have used to preserve its right to an instruction on the learned intermediary defense (especially since — as the majority also acknowledges — there are no standard jury instructions on this defense), it is clear from the record that Union Carbide asked that the jury be instructed on the learned intermediary defense and proposed jury instructions that included several non-exhaustive factors that would have been appropriate for the jury to consider in assessing whether it was reasonable under the circumstances for Union Carbide to rely on its intermediaries to warn end users. It is further clear that the facts supported the application of the learned intermediary defense and that a jury instruction on this defense was neces *523-561 sary to properly resolve Aubin’s failure to warn claims since, without this instruction, the jury might have reasonably been misled into concluding that it had to find Union Carbide at fault simply because Union Carbide did not directly warn end users.[9] See R.J. Reynolds Tobacco Co. v. Jewett, 106 So.3d 465, 467 (Fla. 1st DCA 2012) (“A trial court abuses its discretion when it fails to give a proposed instruction that is (1) an accurate statement of the law, (2) supported by the facts of the case, and (3) necessary for the jury to properly resolve the issues, so long as the subject of the proposed instruction is not covered in other instructions given to the jury and the failure to instruct is shown to be prejudicial.”); see also McPhee v. The Paul Revere Life Ins. Co., 883 So.2d 364, 368 (Fla. 4th DCA 2004) (explaining that an erroneous jury instruction constitutes reversible error where the instruction “reasonably might have misled the jury”).
Accordingly, because the jury instructions on Aubin’s failure to warn claims were misleading and because it is impossible to tell from the jury’s verdict whether the jury’s finding that Union Carbide “place[d] products on the market with a defect which was the legal cause of damage to [Aubin]” applies to Aubin’s design defect claim, warning defect claim, or both, Union Carbide is entitled to a new trial. I respectfully dissent.
CANADY, J., concurs.

. The fact that the jury allocated fault to some of Union Carbide’s intermediaries does not, as the majority suggests, establish the jury instructions were not misleading. Over Union Carbide’s objection, the verdict form did not separate the theories of liability, making it impossible to tell why the jury found Union Carbide liable or why it attributed fault in the manner it did. In fact, the jury’s allocation of over half of the fault to intermediaries could just as easily suggest that the jury rendered a plaintiff’s verdict because it believed it had to find Union Carbide at fault solely because Union Carbide did not directly warn end users.